UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VICTORIA BELL

        Plaintiff,

      v.                      **REPORT AND RECOMMENDATION**
                             **09-CV-0037 (NAM)(VEB)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.    Introduction

Plaintiff Victoria Bell brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner concedes that the ALJ erred at step five of the sequential evaluation, but contends that the remainder of the ALJ's decision was supported by substantial evidence and made in accordance with the correct legal standards.

## II.    Background

Plaintiff applied for both DIB and SSI on April 20, 2006, alleging an onset date of November 1, 2004 (R. at 55-57, 299-301).[2] Plaintiff alleges disability due to mild mental

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated October 2, 2009.
[2] Citations to the underlying administrative record are designated as "R."

1

retardation, depressive and anxiety disorders, headaches, asthma, and arthralgias[3] in
her hands. Her applications were denied initially on June 8, 2006 (R. at 28-32, 27, 302).
Plaintiff filed a request for a hearing on July 27, 2006 (R. at 34).

On November 29, 2007, Plaintiff appeared before the ALJ (R. at 304-38). The
ALJ considered the case *de novo* and, on April 25, 2008, issued a decision finding
Plaintiff not disabled (R. at 15-26). The ALJ's decision became the Commissioner's final
decision in this case when the Appeals Council denied Plaintiff's request for review on
January 2, 2009 (R. at 5-7). On January 12, 2009, Plaintiff filed this action.

Pursuant to General Order No. 18, issued by the Chief District Judge of the
Northern District of New York on September 12, 2003, this Court will proceed as if both
parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

### III.   Discussion

### A.   Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*
whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.
Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the
Commissioner's determination will only be reversed if the correct legal standards were
not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817
F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the
ALJ applied correct legal principles, application of the substantial evidence standard to

---

[3] Joint pain. Dorland's Illustrated Medical Dictionary, 152 (31st ed. 2007).
[4] Although no motion for judgment on the pleadings was filed, the moving party was excused from such
filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as
if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General
Order No. 18. (N.D.N.Y. Sept. 12, 2003).

uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to

---

[5] The five-step process is detailed as follows:

determine whether an individual is disabled as defined under the Social Security Act.
See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the
validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96
L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a
claimant is disabled.

   While the claimant has the burden of proof as to the first four steps, the
Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.
at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

   The final step of the inquiry is, in turn, divided into two parts. First, the
Commissioner must assess the claimant's job qualifications by considering his or her
physical ability, age, education, and work experience. Second, the Commissioner must
determine whether jobs exist in the national economy that a person having the
claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§
416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76
L.Ed.2d 66 (1983).

---

      First, the [Commissioner] considers whether the claimant is currently engaged in
   substantial gainful activity. If he is not, the [Commissioner] next considers whether the
   claimant has a "severe impairment" which significantly limits his physical or mental ability
   to do basic work activities. If the claimant has such an impairment, the third inquiry is
   whether, based solely on medical evidence, the claimant has an impairment which is
   listed in Appendix 1 of the regulations. If the claimant has such an impairment, the
   [Commissioner] will consider him disabled without considering vocational factors such as
   age, education, and work experience; the [Commissioner] presumes that a claimant who
   is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether,
   despite the claimant's severe impairment, he has the residual functional capacity to
   perform his past work. Finally, if the claimant is unable to perform his past work, the
   [Commissioner] then determines whether there is other work which the claimant could
   perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d
72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

Based on the entire record, the Court recommends remand for failure to properly consider the medical opinions of record and evaluate Plaintiff's credibility. As Defendant concedes, the Court also recommends remand for failure to obtain evidence from a vocational expert ("VE").

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the insured status of the Act through September 30, 2006 (R. at 17); (2) Plaintiff engaged in work activity since her alleged onset date of November 1, 2004, but that work was not substantial gainful activity ("SGA") (R. at 17); ***(3)*** (3) Plaintiff's borderline intellectual functioning was her sole severe impairment (R. at 18); (4) Plaintiff's depressive disorder, "difficulty with her hands, anxiety, migraine headaches and . . . asthma" were not severe impairments (R. at 10); (5) Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (R. at 20); (6) Plaintiff "retain[ed] the residual functional capacity during the course of an 8-hour workday to perform work at the light level of exertion with avoidance of respiratory irritants and in jobs with simple routine tasks" (R. at 21); (7) "[T]he veracity of the claimant's statements regarding the intensity, frequency and duration of her complaints [are] viewed with some skepticism" (R. at 23); (8) Plaintiff "[wa]s unable to perform any past relevant work" (R. at 24); (9) Plaintiff was born on August 28, 1972, and therefore was a younger

individual[6] at all times relevant to this case (R. at 25); (10) "A finding of 'not disabled' [wa]s [] appropriate under the framework of" Medical-Vocational Rule 202.20[7] (R. at 25). Ultimately, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (R. at 26).

### 2.  Plaintiff's Claims:

Plaintiff argues that the decision of the ALJ is neither supported by substantial evidence nor in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred at step one of the sequential analysis based on his finding that because of her babysitting work, she was presumed to have the ability to work; b) the ALJ erred in finding several of Plaintiff's impairments to be not severe; c) the ALJ erred in analyzing Plaintiff's credibility; d) the ALJ erred in finding Plaintiff failed to meet Listing 12.05C; e) the residual functional capacity ("RFC") is not supported by substantial evidence; f) the ALJ erred in failing to obtain the testimony of a VE; g) the case should be remanded with instructions for a hearing within sixty days.

Defendant concedes that the ALJ erred in failing to obtain the testimony of a VE, and therefore, the case should be remanded. However, Defendant contends that the remainder of the ALJ's decision is supported by substantial evidence and free of legal error.

### a)  The ALJ Did Not Err at Step One of the Sequential Evaluation

Plaintiff argues that the ALJ erred in finding that her work as a babysitter "create[d] 'a presumption'" that Plaintiff had the ability to work. Plaintiff's Brief, p. 13

---

[6] A "younger person," is an individual "under age 50." 20 C.F.R. § 404.1563(c).
[7] Medical-Vocational Guideline Rule 202.20 requires a finding of not disabled when a claimant is a younger individual, is a high school graduate or more, and has unskilled or no past work. 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 202.20.

(quoting (R. at 17-18)). While somewhat unclear, Plaintiff appears to further argue that the ALJ erred in failing to properly consider Plaintiff's past work in determining whether she had engaged in substantial gainful activity ("SGA"). Plaintiff's Brief, pp. 13-15.

The ALJ noted Plaintiff's testimony that she babysits for fifteen to twenty hours, earning approximately twenty-five to thirty dollars, per week (R. at 17). The ALJ then went on to note that

> [a]lthough there are no posted earnings to verify or corroborate the amount of income earned by the claimant for her babysitting services, it is the opinion of the undersigned Administrative Law Judge that the data received into evidence creates a presumption that the claimant was capable of engaging in basic work activities on somewhat of a sustained basis subsequent to her alleged onset date and through the date of this decision, even if on a part-time basis

(R. at 17-18).

Presumptions may arise at various points throughout the sequential evaluation. See DeChirico v. Callahan, 13f F.3d 1177, 1180 (2d Cir. 1998) ("The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability.") (internal citations removed); Moulding v. Astrue, 2009 WL 3241397, at *6 (S.D.N.Y. Oct. 8, 2009) ("Generally, if the claimant's earnings from employment exceed a certain threshold amount specified in the Commissioner's regulations, it is presumed that she has demonstrated the capacity to engage in substantial gainful activity.") (internal citations removed).  However, in our case the Court can find no legal basis for the ALJ's contention that Plaintiff's work as a babysitter create[d] the presumption [that she] was capable of engaging in basic work activities on somewhat of a sustained basis" (R. at 17). Moreover, the finding by the ALJ that Plaintiff's babysitting activities did not constitute SGA, but at the same time relied on a

questionable presumption that she was capable of engaging in basic work activities, appears contradictory and is confusing.  Nevertheless, the Court could not find, nor does Plaintiff articulate, any impact that the ALJ's misguided application of a presumption had on his decision. Thus, the Court declines to remand on this issue.

The ALJ's findings at step one of the sequential evaluation are also free of legal error. The purpose of step one is to determine whether Plaintiff has engaged in SGA. 20 C.F.R. §§ 416.920(a)(4)(i)(b). If Plaintiff has engaged in SGA, she will be found "not disabled regardless of [her] medical condition or [her] age, education, and work experience. 20 C.F.R. § 416.920(b). Here, the ALJ found Plaintiff's babysitting did not rise to the level of SGA (R. at 17-18). Therefore, he properly continued on with the sequential evaluation. Notably, Plaintiff does not argue that the ALJ's continuation on to step two was erroneous.

Therefore, the Court can find no error with the ALJ's findings at step one of the sequential evaluation. However, as Defendant has conceded that this case requires remand, the ALJ may wish to reconsider his use of the word 'presumption' in this context because it is a legal term of art. See Black's Law Dictionary (8th ed. 2004), available at BLACKS (Westlaw) (defining presumption as "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts.  Most presumptions are rules of evidence calling for a certain result in a given case unless the adversely affected party overcomes it with other evidence").

### b)  The ALJ's Findings at Step Two

Plaintiff argues that the ALJ erred in finding her borderline intellectual functioning

to be severe but not her diagnosis of mild mental retardation. Plaintiff's Brief, p. 16.

Plaintiff further contends that the ALJ erred in failing to find her depression, anxiety,

headaches, asthma, and arthralgias in her hands to be severe impairments. Plaintiff's

Brief, pp. 15-20. The Court will evaluate Plaintiff's i) mental impairments and ii) physical

impairments, separately.

### i) The Court Cannot Determine Whether the ALJ's Mental Severity Findings are Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding her afflicted with borderline

intellectual functioning and not mild mental retardation. Plaintiff's Brief, p. 16. Plaintiff

further contends that the ALJ erred in finding her depression and anxiety impairments to

be not severe. Plaintiff's Brief, pp. 15-19.

The ALJ found Plaintiff's borderline intellectual functioning to be her sole severe

impairment (R. at 18). In addition to Plaintiff's mental retardation, the ALJ also found

Plaintiff's depressive disorder and anxiety to be non-severe impairments (R. at 18-20).

The Court is unable to determine whether the ALJ's mental severity findings are

supported by substantial evidence because his analyses of the medical opinions of

record were fraught with legal error.

The record contains medical evidence from May 2003 (R. at 198), through

December 2007 (R. at 286). However, the record contains little evidence from any one

source. It appears that not one of Plaintiff's medical sources saw her on more than a

few occasions. Not surprisingly, none of Plaintiff's sources supplied a mental functional

assessment or medical source statement ("MSS"). The Court acknowledges that

treatment notes from Plaintiff's sources contain a few assessments of Plaintiff's ability to

work. However, these assessments were vague and were not provided by acceptable medical sources.[8] For example, on May 8, 2006, nurse practitioner Carolee Dornau,[9] noted that, due to Plaintiff's depression, "she [wa]s very forgetful and lack[ed] motivation" (R. at 257-58). Ms. Dornau also opined that Plaintiff's "depression [was] likely affecting her sleep, her outbursts, and inability to focus" (R. at 257). On June 15, 2006, Ms. Dornau noted that since Plaintiff began Welbutrin, an antidepressant, she felt more motivated, socialized more without becoming so angry and short tempered, and had more energy (R. at 252). Ms. Dornau opined that Plaintiff was capable of "repetitious type skills such as factory work" and recommended Plaintiff return to work because "sitting at home all day [] would likely worsen her depression" (R. at 253).

Thus, the only evidence provided by acceptable medical sources, was supplied by two Social Security Administration ("SSA") consultative sources: examining psychologist, Jeanne Shapiro, Ph.D.; and non-examining review psychologist, C. Richard Nobel, Psy.D.[10] However, the Court's ability to determine whether the ALJ's findings are supported by substantial evidence is frustrated by both his mistaken dismissal of Dr. Shapiro's opinions as well as his failure to discuss Dr. Nobel's opinions.

---

[8] The record contains treatment notes concerning Plaintiff's depression and anxiety from nurse practitioner Carolee Dornau (R. at 252-54, 257-58); nurse practitioner Kristin Cominsky (R. at 255-56); nurse practitioner Laura Jacobsen (R. at 280-81); and registered physician's assistant certified, Keith Murray (R. at 286, 289). None of these individuals are acceptable medical sources who can provide medical opinions. See 20 C.F.R. § 404.1513(a) (defining an acceptable medical source as licensed physicians and psychologists as well as licensed optometrists, podiatrists, and speech-language pathologists, but only to establish specific impairments); 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from . . . acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

[9] The record indicates that Plaintiff met with Ms. Dornau on two occasions: May 8, 2006 (257-58); and June 15, 2006 (R. at 252-54).

[10] The Court notes that there is other non-medical evidence supporting Plaintiff's claim of mental retardation. Specifically, education records indicate that Plaintiff attended special education classes and graduated with less than a high school diploma (R. at 62-66, 132).

On May 11, 2006, Dr. Shapiro performed both a psychiatric examination and an intelligence evaluation, at the request of the SSA (R. at 206-10, 211-15). At the intelligence evaluation, Dr. Shapiro found Plaintiff had a verbal scale IQ score of sixty-eight, a performance scale IQ score of sixty-seven, and a full scale IQ score of sixty-five (R. at 213). At both of Plaintiff's May 11, 2006 examinations, Dr. Shapiro diagnosed Plaintiff with a depressive disorder as well as mild mental retardation (R. at 209, 214). Dr. Shapiro opined that

> [v]ocationally, the claimant will have difficulty adequately understanding and following some instructions and directions unless [sic] completing some tasks due to a tension [sic] and concentration deficits secondary to depression. She will have difficulty interacting appropriately with others given her rudeness and difficulty dealing with others. Even attending work or maintaining a schedule would be difficult given her lack of motivation. She does not appropriately manage stress

(R. at 209, 214).

Dr. Shapiro completed a subsequent psychiatric examination on September 6, 2007, again at the request of the SSA (R. at 268-70). Dr. Shapiro diagnosed Plaintiff with posttraumatic stress disorder, depressive disorder, and rule out mild mental retardation (R. at 269A). Dr. Shapiro opined that

> [v]ocationally, the claimant appears to be capable of understanding and following simple instructions and directions. Barring any medical contraindications, she appears to be capable of performing simple and some complex tasks with supervision and independently. She appears to be capable of maintaining attention and concentration for tasks. She may not always feel motivated to regularly attend to a routine and maintain a schedule. She appears to be capable of learning some new tasks. She appears to be capable of making some appropriate decisions. She appears to find it difficult at times to relate to and interact appropriately with others. She appears to have some difficulty adequately dealing with stress.

Id.

11

At the outset, the Court notes that the ALJ erred in failing to weigh Dr. Shapiro's opinions and completely ignored Dr. Nobel's findings and opinions, as further discussed below. 20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . ."); see also Social Security Ruling 96-6p, 1996 WL 374180 at *2  (S.S.A.) (hereinafter SSR 96-6p) ("Administrative law judges . . . are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

In addition to the ALJ's erroneous failure to grant weight to Dr. Shapiro's opinions, his decision indicates that he dismissed her findings. The ALJ found that Dr. Shapiro's May 2006 "conclusions were based on subjective complaints with no foundation in prior treatment, assessment or otherwise" (R. at 18). The ALJ similarly found Dr. Shapiro's September 2007 "conclusions were based on the claimant's subjective complaints as reported and no prior history of mental health treatment or medical health history to corroborate her allegations." Id. The sole mental restriction in the RFC limited Plaintiff to work "with simple routine tasks" (R. at 21). It is therefore clear that the ALJ rejected Dr. Shapiro's opinions.

On June 6, 2006, Dr. Nobel, completed both a mental RFC and psychiatric review technique, at the request of the SSA (R. at 232-50). Dr. Nobel diagnosed Plaintiff with an organic disorder, and noted that despite her IQ scores, her functioning "seem[ed] more in line with borderline intelligence" than mental retardation (R. at 238).

12

Dr. Nobel also diagnosed Plaintiff with depression (R. at 240).

Dr. Nobel opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others (R. at 232-33). Dr. Nobel found Plaintiff was not significantly limited in all other categories. Id. The ALJ failed to discuss, or even mention, Dr. Nobel's opinions at any point in his decision.

The ALJ's analysis of the severity of Plaintiff's mental impairments contains several errors. First, the ALJ erred in dismissing Dr. Shapiro's opinions because they were based, in part, on Plaintiff's subjective complaints. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) ("[A] patient's report of complaints, or history, is an essential diagnostic tool."). Second, the ALJ failed to discuss Dr. Nobel's opinions and there is no indication that he considered or relied on those opinions in making his decision. This is also error. Lopez v. Sec'y of Dep't of Health & Human Sevs., 728 F.2d 148, 150-51 (2d Cir. 1984) (the ALJ has an obligation "to consider relevant and probative evidence which is available to him"). Given the limited number of medical opinions assessing Plaintiff's mental functioning, the ALJ's failure to consider Dr.

13

Nobel's opinions is especially puzzling. The ALJ also erred in failing to weigh the opinions from both Dr. Shapiro and Dr. Nobel. <u>See</u> 20 C.F.R. § 404.1527(f)(2)(ii) These errors are reason enough to remand.

However, the most significant failure in the ALJ's assessment of Plaintiff's mental impairments, is that without the opinions from Dr. Shapiro and Dr. Nobel, the ALJ had no other medical opinions upon which to rely.[11] Because the ALJ "viewed [Plaintiff's complaints] with some skepticism" and either dismissed or ignored all the medical opinions assessing Plaintiff's mental functioning, the Court cannot determine on what evidence the ALJ relied when making his severity findings (R. at 23); <u>See</u> <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."). Thus, the Court cannot determine whether the ALJ's determinations concerning the severity of Plaintiff's mental impairments are supported by substantial evidence.

### ii) The Court Cannot Determine Whether the ALJ's Physical Severity Findings are Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in finding her headaches, asthma, and arthralgias to be non-severe impairments. Plaintiff's Brief, 19-20.

The ALJ found Plaintiff's "difficulty with her hands . . . migraine headaches and . .

---

[11] As previously stated, treatment notes from Plaintiff's sources contained a few assessments of Plaintiff's ability to function despite her mental impairments. However, none of those sources were acceptable medical sources. 20 C.F.R. § 404.1513(a). As such, they could not provide medical opinions. 20 C.F.R. § 404.1527(a)(2).

. asthma" to be non-severe impairments (R. at 18-20). As with Plaintiff's mental impairments, the only acceptable medical sources to provide opinions concerning Plaintiff's ability to work despite her physical impairments were the SSA consultative sources: Dr. Berton Shayevitz, and Dr. Kalyani Ganesh. Although it appears the ALJ properly assessed Dr. Ganesh's opinions, he improperly dismissed the opinions from Dr. Shayevitz.

Dr. Shayevitz examined Plaintiff on May 11, 2006, at the request of the SSA (R. at 201-05). Dr. Shayevitz diagnosed Plaintiff with: "1) Significant psychosocial issues. 2) Possible carpal tunnel. 3) Somewhat sensitized airway with some very intermittent wheezing and shortness of breath as best I could tell. 4) Headaches, which may or may not be migraine, most likely are related to anxiety of which she has plenty" (R. at 205). Dr. Shayevitz opined that Plaintiff was "intermittently limited by shortness of breath on effort. Moderately limited by intermittent headaches. Moderate limitations in use of hands for fine & repetitive motions" (R. at 205). The ALJ found that "[t]he 'moderate' limits imposed by Dr. Shayevitz [we]re not quantified and not supported by objective findings and thus are of no evidentiary value" (R. at 20). The ALJ later stated that Dr. Shayevitz's opinions were "based on the claimant's subjective complaints and . . . thus of little evidentiary value" (R. at 22).

Plaintiff underwent a subsequent physical examination with Dr. Ganesh on September 5, 2007, again at the request of the SSA (R. at 271-72A). Dr. Ganesh diagnosed Plaintiff with: "1. History of anxiety/depression. 2. Asthma. 3. Arthritis of the hands. 4. Headache" (R. at 272). Dr. Ganesh opined that Plaintiff had "[n]o gross physical limitation[s] [] to sitting, standing, walking, or the use of upper extremities" (R.

at 272A). The ALJ found that this "opinion [was] entitled to significant evidentiary weight because it was based on objective clinical and diagnostic findings" (R. at 22).

Thus, the ALJ rejected Dr. Shayevitz's moderate limitations, in favor of Dr. Ganesh's findings of no limitations. Parenthetically, the Court notes that the only medical opinion to which the ALJ afforded significant, or any, weight, was the sole opinion finding that Plaintiff had no limitations. The Court is troubled by the ALJ's apparent rejection of every medical opinion in which there were findings of limitations.

The Court acknowledges that "an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (citations removed). However, here, the ALJ did not reject Dr. Shayevitz's opinions because they were in conflict with Dr. Ganesh's opinions, or other evidence in the record. Instead, the ALJ found that Dr. Shayevitz's opinions were based on Plaintiff's subjective complaints and not objective medical evidence (R. at 20, 22).

As previously stated, an ALJ may not reject a physician's opinions because they are based, at least in part, on Plaintiff's subjective complaints. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) ("[A] patient's report of complaints, or history, is an essential diagnostic tool.").

Moreover, the ALJ offered no support for his contention that objective medical evidence failed to support Dr. Shayevitz's opinions. Indeed, evidence from Dr. Shayevitz's examination supports his findings. For example, Dr. Shayevitz opined that Plaintiff would have a "[m]oderate limitation in use of hands for fine and repetitive motion" (R. at 205). During the examination of Plaintiff's hands, Dr. Shayevitz found that

16

"[p]ossibly, the right Tinels is positive. She develops tingling in her right 3rd digit with pressure over the median nerve and with the pressure over the left median nerve and pain in all five digits with tingling. The Tinel's tests are suggestive of possible carpal tunnel" (R. at 204). Dr. Shayevitz then diagnosed Plaintiff with "[p]ossible carpal tunnel" (R. at 205). As noted by Dr. Shayevitz, the positive Tinel's tests indicated carpal tunnel syndrome, and are therefore objective medical evidence supporting limitations in Plaintiff's hands. See Attorneys Medical Deskbook 4th, (4th ed. 2008), *available at* MEDDESK § 24:15(IV) ("Physical examination for carpal tunnel syndrome should include one or more of the following tests: Carpal Compression Test, Flick Test, Pencil Test, Phalen's Test, *Tinel's Sign*, Tourniquet Test, Two Point Discrimination Test, or Wrist Flexion Test . . . .") (emphasis added) (Westlaw).

Because the ALJ erred in analyzing the medical opinions of record for both Plaintiff's mental and physical functioning, the Court cannot determine whether his findings at step two of the sequential evaluation are supported by substantial evidence. See Martone v. Apfel, 70 F.Supp.2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986 (2d Cir. 1987)) ("[W]here there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards, even if the ultimate decision may be arguabl[y] supported by substantial evidence, the Commissioner's decision may not be affirmed." ). Therefore, the Court recommends remand to allow the ALJ an opportunity to re-evaluate the opinions of the SSA consultative examining and non-examining sources.

### c)  The ALJ Erred in Evaluating Plaintiff's Credibility

Plaintiff argues that the ALJ erred in analyzing Plaintiff's credibility. Plaintiff's

Brief, pp. 24-25.

The ALJ found that "the veracity of the claimant's statements regarding the intensity, frequency and duration of her complaints . . . be viewed with some skepticism" (R. at 23). The Court concludes that the ALJ erred in failing to complete the required two-step process.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush, 2008 WL 4186510, at *12. Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[12] 20

---

[12] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

C.F.R. §§ 416.929(c)(3)(i)-(vii).

If the ALJ finds Plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y. 1987)).

Although it appears that the ALJ completed the second step of the analysis, he failed to make the necessary step one finding. Specifically, the ALJ failed to determine whether Plaintiff's medially determinable impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). This is error. See Hogan v. Astrue, 491 F.Supp.2d 347, 352-353 (W.D.N.Y. 2007) (remanding, in part, because the ALJ failed to find whether plaintiff's impairments "could reasonably be expected to produce the pain . . . she alleged" despite noting that the ALJ "carefully review[ed]" the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii)).

Therefore, on remand, the ALJ must reassess Plaintiff's credibility and make the necessary findings at both steps of the two-step process.

### d)  The ALJ's Findings at Step Three of the Sequential Evaluation are Necessarily Flawed

Plaintiff argues that the ALJ erred in failing to find she met Listing 12.05C, for mental retardation. Plaintiff's Brief, 20-22; Plaintiff's Response, pp. 1-2. Plaintiff further contends that the case should be remanded, on this basis, solely for calculation of benefits. Id.

Because the ALJ erred in evaluating the medical opinions of record, the ALJ's step three findings are necessarily flawed. As such, the Court will not recommend remand solely for calculation of benefits. See Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted) ("[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand[] for further development of the evidence" is proper). Instead, on remand, the ALJ must once again consider whether Plaintiff meets the criteria for Listing 12.05C.

### e)  The ALJ's RFC Determination is Necessarily Flawed

Plaintiff argues that the RFC is not supported by substantial evidence. Plaintiff's Brief, pp. 22-23. Specifically, Plaintiff argues that the ALJ failed to complete the required function-by-function assessment for both her physical and mental abilities. Id.

The Court has previously recommended remand for failure to properly consider and weigh the medical opinions of record. Therefore, the RFC is necessarily flawed.

### f)  Defendant Concedes the ALJ Erred in Failing to Call a VE

Plaintiff argues that the ALJ erred in finding Plaintiff not disabled by relying on the medical-vocational guidelines without consulting a VE. Plaintiff's Brief, pp. 23-24. Based on the evidence of record, Defendant concedes that the ALJ erred in failing to consult a VE. Defendant's Brief, pp. 2-6. Thus, the Court recommends remand to allow the ALJ to obtain testimony from a VE.

### g)  The Order Requiring a New Hearing within Sixty Days is Not Necessary

Plaintiff's final argument is that if the Court denies her request for remand solely for calculation of benefits, based on Listing 12.05C, the Court should order a new

hearing to be scheduled within sixty days of remand. Plaintiff's Response, pp. 2-5.

Plaintiff bases her contention on *Butts v. Barnhart*, 388 F.3d 377 (2d Cir. 2004).
Mr. William Butts, initially filed for disability in May 1996. Butts, 388 F.3d at 380. A final
decision in Mr. Butts' federal action was handed down by the Second Circuit in January
2004. Id. Thus, Mr. Butts' disability claim, and subsequent appeals, covered
approximately seven and one half years.

In *Butts*, the Second Circuit noted that

> . . . in cases involving an ALJ's failure to call a vocational expert, district
> courts that select remand as a remedy should consider imposing a time
> limit on the subsequent proceedings. In this case, the past delay is of such
> magnitude-years-that a time limit is imperative. We therefore instruct the
> district court to direct that further proceedings before an ALJ be completed
> within 60 days of the issuance of the district court's order . . . .

Id. at 387. Thus, although *Butts* instructs the district courts to consider appointing a time
limit in cases remanding solely to obtain the testimony of a VE, the Second Circuit found
the time limit "imperative" because of the considerable "past delay." Id. However, here,
Plaintiff initially filed for disability in April 2006 (R. at 55-57). The ALJ issued a decision
denying disability on April 28, 2008 (R. at 15-26); and the current action was filed on
January 12, 2009, not by any means an egregious length of time. This is in contrast to
Mr. Butts' seven and one half years wait.

Although the Court is "mindful of the 'often painfully slow process by which
disability determinations are made,'" here, Plaintiff's delay does not rise to the level that
existed in *Butts*. Id. (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638,
644 (2d Cir. 1983). Therefore, this Court declines to impose a time limit.

# IV.    Conclusion

After carefully examining the administrative record, the Court finds that the ALJ erred in evaluating the medical opinions of record and in analyzing Plaintiff's credibility. Defendant also concedes that the ALJ erred in failing to obtain the testimony of a VE. It is therefore recommended that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


          Syracuse, New York
DATED:    April 27, 2010

# ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


Syracuse, New York
DATED:      April 27, 2010